UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA FINNEY,<br><br>    Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>    Defendant. | Case No. 17-cv-06183-JST<br><br>**ORDER GRANTING JUDGMENT ON THE PLEADINGS**<br><br>Re: ECF No. 9 |

Before the Court is Defendant Ford Motor Company's ("Ford") motion for judgment on the pleadings.[1] ECF No. 9. The Court will grant the motion as to all claims but Plaintiff Finney's claim under the Song-Beverly Consumer Warranty Act.[2]

**I.   BACKGROUND**[3]

On October 2, 2005, Laura Ellen Finney purchased a new 2006 Ford F-250 Super Duty pick-up truck with a 6-liter diesel engine at the Novato Ford dealership. ECF No. 1-2 ("FAC") ¶¶ 16-17, 24. Before purchasing the truck, Finney read Ford's promotional materials which stated

---

[1] Both parties seem to have recycled their arguments from briefs in other cases. For example, Ford's attorneys repeatedly refer to plaintiff Laura Finney as a man, *e.g.*, ECF No. 10 at 7 ("Plaintiff has not and cannot meet *his* burden") (emphasis added), 11 ("Plaintiff conclusorily alleges 'delayed discovery' here, in order to excuse *his* noncompliance with the statute of limitations") (emphasis added)), and Finney's lawyers refer to a motion that Ford has not filed, ECF No. 14 at 9 (referring to "Ford's motion for summary adjudication"). Plaintiff's complaint also contains recycled language. FAC ¶ 139 ("Plaintiff was a putative member of the *Custom Underground* class action . . . because *he* owned a 2006 Ford F-250 . . . ."). The Court has ignored these distractions.

[2] Defendant did not move for judgment on the pleadings as to Finney's Song-Beverly Consumer Warranty Act claim, FAC ¶¶ 305-21.

[3] For the purposes of deciding this motion, the Court accepts as true all allegations set forth in Plaintiff's FAC. *See Brooks v. Dunlop Mfg. Inc.*, No. C 10–04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011).

that the truck had the "strength to handle the toughest assignments," and that the engine was the "longest lasting diesel in its class." *Id.* ¶ 20. Similarly, when Finney purchased her truck at Novato, sales personnel led her to believe that the truck "would offer superior power and tow capacity." *Id.* ¶ 24. Finney relied on these materials and statements when she purchased her truck. *Id.* ¶¶ 22, 25.

Finney subsequently experienced problems with the truck, which included oil leaks and problems with the fuel injection and oil pump. *Id.* ¶ 27. The Ford dealership "attempted to make repairs to the vehicle's engine on multiple occasions," and continually represented that it had fixed the engine's problems, but the problems persisted. *Id.* ¶¶ 29, 32. Finney relied on the dealership's statements that it had fixed any engine problems. *Id.* ¶ 32. Finney alleges that Ford was aware of the engine defect. She points to a May 2002 statement by Charlie Freese, Ford's Chief Engineer of Diesel Engines, that the engine had "multiple high risk items." *Id.* ¶ 39; *see also id.* ¶ 46 (citing similar statements by Chris Bolen, Ford's director of North America Powertrain Manufacturing in July 2005). In January 2007, Ford sued its engine supplier, Navistar, "for what it termed exceptionally high repair rates and warranty costs due to quality problems attributable to Navistar, including design flaws." *Id.* ¶ 48 (internal quotation marks omitted). Though Ford knew about the engine defects, it continued to market its engine as strong and powerful. *Id.* ¶ 50.

Finney alleges that she first became aware of her truck's engine defects on March 24, 2015 when her "check engine" light came on, and that she could not have become aware of the defects before that date. *Id.* ¶ 72.

Claims regarding the same engine defects were previously raised in three class action lawsuits: *Adams v. Ford Motor Company*, No. 37-2012-91290-CR-BC-CTl in San Diego Superior Court; *Burns v. Navistar Inc.& Ford Motor Co.*, 10-cv-2295-LAB-BGS in the Southern District of California; and *Custom Underground, Inc. v. Ford Motor Co.*, 1:10-cv-127 in the Northern District of Illinois, all of which were consolidated into a multi-district litigation matter, *In re: Navistar 6.0 L Diesel Engine Products Liability Litigation*, No. 11-c-2496 in the Northern District of Illinois. FAC ¶¶ 83, 100, 122.

Plaintiff Finney filed this complaint alleging causes of action for (1) fraud in the

2

inducement-intentional misrepresentation; (2) negligent misrepresentation; (3) fraud in the inducement-concealment; (4) fraud in the performance of a contract-intentional misrepresentation; (5) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 2790, *et seq.* ("CLRA"); and (6) violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq*. *Id.* ¶¶ 153-344. She seeks damages, rescission, civil penalties, equitable relief, punitive damages, and attorney's fees and costs. *Id.* ¶¶ 136-37. Defendant Ford now moves for judgment on the pleadings. ECF No. 9.

## II. LEGAL STANDARD

The analysis for Rule 12(c) motions for judgment on the pleadings is "substantially identical to [the] analysis under Rule 12(b)(6)." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and quotation marks omitted). Under both rules, "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Brooks v. Dunlop Mfg. Inc.*, No. C 10–04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011); *Fajardo v. Cty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999). A plaintiff must allege facts that are enough to raise his right to relief "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 55 (2007) (citation omitted). "Finally, although Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend, and to simply grant dismissal of the action instead of entry of judgment." *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citations omitted).

Under Federal Rule of Civil Procedure Rule 9(b), a complaint must supply "the circumstances constituting the alleged fraud" with a description "'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). Fraud claims must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and

how of the misconduct charged." (internal quotation marks omitted)).

## III. DISCUSSION

### A. Whether Plaintiff Adequately Pleads Delayed Discovery

Ford argues that Finney's claim is untimely. ECF No. 10 at 11. Finney's CLRA and common law fraud claims are subject to a three-year statute of limitations, and her negligent misrepresentation claim is subject to a two-year statute of limitations. *See* Cal. Civ. Code § 1783; *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005); *E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal. App. 4th 1308, 1316 (2007) (citing Cal. Civ. Proc. Code § 339)). Finney purchased her truck in 2005, but did not initiate this lawsuit until 2017.[4] Thus, for her claims to be timely, she must adequately allege a basis for tolling.

Finney responds by invoking both the delayed discovery rule and the fraudulent concealment doctrine. ECF No. 14 at 8. "Generally, California law allows tolling of the statute of limitations under the discovery rule; that is, 'the statute of limitations does not begin to run until the plaintiff discovered or had notice of all facts which are essential to the cause of action.'" *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, No. C-05-04726 RMW, 2008 WL 4544441, at *8 (N.D. Cal. Sept. 30, 2008) (quoting *Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292, 296 (1978)). To rely on the discovery rule, a plaintiff must plead facts "which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence . . . . However, mere conclusory assertions that delay in discovery was reasonable are insufficient." *Id.* (internal citations omitted); *see also Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1320–21 (C.D. Cal. 2013).

The fraudulent concealment doctrine holds that "[a] defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable." *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 744 (2007). "[T]he fraudulent concealment by the defendant of a cause of action tolls the relevant statute of limitations, which does not begin to run until the aggrieved party

---

[4] As discussed below, Finney also argues her claims were tolled by substantively similar class actions filed in 2010 and 2012, and settled in 2013.

4

discovers the existence of the cause of action." *Community Case v. Boatwright,* 124 Cal. App. 3d 888, 899 (1981). However, "[w]hen a plaintiff alleges the fraudulent concealment of a cause of action, the same pleading and proof is required as in fraud cases: the plaintiff must show (1) the substantive elements of fraud, and (2) an excuse for late discovery of the facts." *Id.* at 900 (citation omitted). The second element requires the plaintiff to allege "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Id.*; *see also Grisham*, 40 Cal. 4th at 744 (explaining fraudulent concealment tolling "will last as long as a plaintiff's reliance on the misrepresentations is reasonable"). "Fraudulent concealment tolling must be pled with particularity under Fed. R. Civ. P. 9(b)." *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *8 (N.D. Cal. Mar. 12, 2014), *order corrected on denial of reconsideration*, No. 11-CV-2953-RS, 2014 WL 12649204 (N.D. Cal. Apr. 15, 2014).

Finney alleges that her discovery was delayed until March 24, 2015, when her "check engine" light came on. FAC ¶ 72. As for fraudulent concealment tolling, Finney does not allege when or under what circumstances she discovered the alleged fraud, but the Court infers that she discovered the fraud when she discovered the defect, i.e., when her "check engine" light came on. Finney's truck had several mechanical problems during the warranty period, which ended well before March 2015, but each time she visited the Ford dealership she was told that the problem was repaired. ECF No. 14 at 13; FAC ¶¶ 27, 32. According to Finney, due "to the repeated false assurance of Ford and its service dealership agents at the time of these repairs, Plaintiff was unable to discover Ford's misrepresentations, even with diligent investigation." ECF No. 14 at 13. Finney offers no explanation, however, as to why *this* 2015 engine light, as opposed to the many prior problems that brought her to the Ford dealership, put her on notice of her claims.

The Court concludes that Finney fails to adequately allege reasonable diligence in discovering the defect. The case at hand is analogous to *Herremans*, in which another court in this circuit concluded that a plaintiff failed to allege reasonable diligence when the defendant repaired the leak in her car's water pump while under warranty, but plaintiff alleged delayed discovery

5

until the second time she required a repair. *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJWX, 2014 WL 5017843, at *5 (C.D. Cal. Oct. 3, 2014). As in that case, Finney does not "plead why, in the exercise of reasonable diligence, she could not have discovered the defect earlier." *Id.* Specifically, Finney fails to plead why she did not discover the defect until 2015 when she purchased the car 10 years earlier in 2005, and received several repairs seemingly related to the defect while on warranty between 2005 and 2010. FAC ¶ 180 (alleging five year warranty); *id.* ¶¶ 27, 29 (alleging issues with fuel injection, fuel sending, injector control, and the oil pump which caused an inability to tow, and led Finney to seek several repairs).[5] Finney's allegations are particularly implausible given the absence of an explanation as to why a 2015 engine light revealed the defect, but no prior engine issue – whether during the 2005 to 2010 warranty repair period, or after – revealed the defect.[6] Similarly as to fraudulent concealment, Finney fails to show that she "had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Boatwright*, 124 Cal. App. 3d at 900.

The Court will GRANT Defendant judgment on the pleadings on the grounds that her claims are not timely.

### B. Whether Plaintiff is Entitled to the Benefit of *American Pipe* tolling

Finney argues that her claims are nonetheless timely because she benefits from *American*

---

[5] On different facts, this Court recently concluded that plaintiffs alleging a defect in their cars' Bluetooth devices adequately pleaded delayed discovery where the defendant performed several repairs, but never addressed the underlying defect. *See Aberin v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2018 WL 1473085, at *5 (N.D. Cal. Mar. 26, 2018). The Court reasoned that the Bluetooth defect caused "many seemingly *unrelated* defects including batteries, fog lights, headlights, ignitors, starters, door locks, and motor assemblies, and [the p]laintiffs argue[d] plausibly that it would be unreasonable to expect them to connect these issues to a single, undisclosed, underlying defect." *Id.* at *6 (citing *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 961 (N.D. Cal. 2014); *Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013)) (emphasis added). By contrast, the defect in Finney's engine manifested in engine power issues which each affected her car's performance and ability to tow. FAC ¶ 27, 29. *Aberin*, 2018 WL 1473085, at *6 ("Here, Plaintiffs have adequately alleged that further investigation of their known battery issues would not have uncovered sufficient facts about the underlying HFL defect."). Therefore, unlike in *Aberin*, the Court has no reason to conclude that Finney would not have discovered the alleged defect had she acted diligently.

[6] Finney alleges that as a general policy Ford "adopted through its dealers a Band-Aid strategy of offering minor, limited repair measures . . . to conceal the defects until the applicable warranties expires." FAC ¶ 34. But Finney's warranty expired in 2010. *Id.* ¶ 180. Even if the Court accepted this general allegation, it fails to explain reasonable diligence between 2010 and 2015.

6

*Pipe* tolling. In *American Pipe*, the Supreme Court held that filing a class action tolls the applicable statute of limitations for all class members. *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974). The tolling period extends from the time the class action is filed until class certification is denied or the plaintiff opts out. *Resh v. China Agritech, Inc.*, 857 F.3d 994, 1000 (9th Cir.), *cert. granted* (2017).[7] Finney was a member of the putative class in three class actions involving Ford engine defects filed on January 8, 2010, November 5, 2010, and January 25, 2012. ECF No. 1-2 ¶¶ 77-147.

Even assuming that Finney's claims were tolled by these class actions, the limitations period would have restarted when she was excluded from the class in November 2012, or at latest when the class was certified as part of the multi-district litigation class action settlement in July 2013. FAC ¶ 139 ("Plaintiff was a putative member of the *Custom Underground* class action at its inception because he [sic] owned a 2006 Ford F-250; however, Plaintiff was ultimately defined out of the final settlement class by, at the very latest, November 2012."); FAC ¶¶ 140-45; 3 Newberg on Class Actions § 9:59 (5th ed.) ("A plaintiff may not employ American Pipe to 'revive' a claim that had already lapsed at the time the purported class action was filed.").[8] *American* Pipe does not save Plaintiff's claims, which the Court again concludes are untimely. The Court GRANTS Ford's motion for this additional reason.

### C. Whether Plaintiff Adequately Pleads CLRA Actual Reliance

To state a claim for fraudulent omission under the CLRA, a plaintiff first must show that she actually relied on the omission in the sense that "had the omitted information been disclosed,

---

[7] Defendant argues that the prior class actions did not state a claim for common law fraud so Finney's fraud claims are not tolled. ECF No. 10 at 18. The claims need not be identical for tolling to apply, but rather must be only "substantively similar." *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1466 (2015); *see also Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985) ("We find no persuasive authority for a rule which would require that the individual suit must be identical in every respect to the class suit for the statute to be tolled."). Moreover, it appears that the class actions did allege fraud causes of action. *See, e.g.*, *Burns v. Navistar*, 10-CV-2295-LAB-BGS, ECF No. 1 ¶¶ 58-64.

[8] Finney makes contradictory allegations as to how her participation in the class actions was resolved. Finney alleges she was excluded because she did not receive any of the specified repairs in that class definition. FAC ¶ 146. Finney also alleges she requested exclusion from the class action settlement once she learned its terms. *Id.* ¶ 83.

7

one would have been aware of it and behaved differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993)). A court may infer that a plaintiff would have behaved differently where the omission was material. *Id.* Then, a plaintiff must allege that she would have been aware of a disclosure, which can be shown through interactions with sales representatives at an authorized dealership. *Id.* at 1226.

Defendant argues that Finney fails to allege specific detrimental reliance on a misrepresentation as required for her CLRA claim. ECF No. 10 at 10 (citing *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1201 (N.D. Cal. 2010)). Finney counters that her CLRA claim is based on Defendant's concealed omission of a material fact. ECF No. 14 at 12. Here, Finney alleges that had Ford disclosed the engine defect, it would have affected her decision to purchase the truck, based on its reliability and safety. FAC ¶ 237. Finney also alleges that she interacted with sales personnel at Novato Ford, an authorized Ford dealership, who told her the engine had superior performance. *Id.* ¶¶ 24-25.

Because Finney adequately alleges actual reliance on an omission under the CLRA, the Court DENIES Defendant's motion on this ground.

### D. Whether Plaintiff Pleads Strict Compliance with the CLRA's Notice and Cure Provisions

Under Section 1782, before filing a lawsuit, a plaintiff must provide a defendant notice setting forth the "particular alleged violations of the Act." Cal. Civ. Code § 1782(a)(1). Defendant argues that Finney fails to plead strict compliance with this notice and cure requirement. ECF No. 10 at 12-13.

Finney's FAC alleges that she sent Ford a certified letter of alleged violations. FAC ¶ 333 ("Plaintiff notified Ford by certified mail, return receipt requested, of the alleged violations and demanded that Ford correct, repair, replace, or otherwise rectify the violations."). As a matter of pleading, this is sufficient. *Saitsky v. DirecTV, Inc.*, No. CV 08-7918 AHM (CWX), 2009 WL 10670629, at *6 (C.D. Cal. Sept. 22, 2009) (holding that "the plaintiff fails to state a claim under the CLRA" if "the plaintiff fails to allege in the complaint that he or she gave the defendant proper notice under the CLRA"). While Defendant Ford argues that Finney "has merely alleged in

8

similar conclusory fashion that he [sic]⁹ sent Ford a certified letter of 'alleged violations,'" ECF No. 10 at 13, it does not place the letter before the Court or otherwise allow the Court to evaluate the letter's purported insufficiency. The Court DENIES Ford's motion on this ground.

### E. Whether Plaintiff Adequately Pleads Concealment

Defendant argues Plaintiff fails to adequately plead concealment because she failed to allege a duty to disclose. ECF No. 10 at 14-15. "[C]oncealment can constitute actionable fraud in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094–95 (N.D. Cal. 2007) (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)). Defendants' only specific argument is that it had no fiduciary duty to Finney. ECF No. 10 at 14-15. The Court agrees that Finney does not allege a fiduciary relationship.

There are other bases for Finney's concealment claim, however. Finney argues that a duty to disclose arose because Ford had superior knowledge of the material engine defect. ECF No. 14 at 11. "In order for non-disclosed information to be material, a plaintiff must show that had the omitted information been disclosed, one would have been aware of it and behaved differently." *Falk*, 496 F. Supp. 2d at 1095 (citations omitted) (requiring plaintiff to have had expectations about the fact). Finney alleges that her engine's defect, which could not be repaired, was material because it relates to reliability and safety. FAC ¶ 237. Finney also alleges that Ford's directors, as well as its dealership employees, had knowledge of the defect including based on dealership complaints and high repair rates. *Id.* ¶ 242 (referring to such complaints as the "usual suspects"). The Court DENIES Ford's motion on this ground.

### F. Whether Plaintiff Adequately Pleads Misrepresentation

Defendant argues that Finney fails to adequately plead fraudulent misrepresentation because she fails to specifically plead a misrepresentation known to be false at the time. ECF No.

---

⁹ See footnote 1, *supra*.

9

10 at 15. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. Finney alleges that prior to purchasing her truck, she received and read promotional materials which included specific statements such as that the truck had the "longest lasting diesel motor." FAC ¶ 20. Finney does not allege, however, when Ford specifically made those alleged misrepresentations, nor when she read them. *Id.* Similarly, while Finney alleges that before she purchased her truck at Novato Ford, "sales personnel" told her the engine offered "superior power and tow capacity," she does not allege specifically when this occurred, nor who made the representation. *Id.* ¶ 24. Finney makes somewhat more specific allegations later in the FAC, for example that Mark Fields, Ford's President of the America's, publicly proclaimed that the truck had a "great engine," but Finney does not allege when this statement was made, nor that she relied on the statement before purchasing her truck. *Id.* ¶ 50.

*Kearns* is instructive. In that case, plaintiff Kearns purchased a Certified Pre-Owned ("CPO") vehicle from a Ford dealership. He claimed that "Ford ma[de] false and misleading statements concerning the safety and reliability of its CPO vehicles," and "that, by making such false statements, Ford conspire[d] to mislead class members into believing that the CPO program guarantees a safer, more reliable, and more roadworthy used vehicle." *Id.* at 1123. He filed a complaint against Ford, alleging violations of the CLRA and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210. *Id.* at 1122. Because those state law claims are subject to Rule 9(b), Kearns – like Plaintiff here – was required to plead his claims with particularity. *Id.*

The district court dismissed Kearns' complaint, and the Ninth Circuit affirmed. Both Kearns' claims and their shortcomings are remarkably similar to those at issue here:

> Reviewing the complaint, Kearns alleges that Ford engaged in a fraudulent course of conduct. Kearns's TAC alleges that Ford Motor Company conspires with its dealerships to misrepresent the benefits of its CPO program to sell more cars and increase revenue. Kearns alleges that Ford's marketing materials and representations led him to believe that CPO vehicles were inspected by specially trained technicians and that the CPO inspections were more rigorous and therefore more safe. Kearns alleges he was exposed to these representations through (1) Ford's televised national marketing campaign; (2) sales materials found at the

10

> dealership where he bought his vehicle; and (3) sales personnel working at the dealership where he bought his vehicle. In reliance on these representations, Kearns claims he purchased a CPO vehicle. Therefore he alleges that Ford engaged in a fraudulent course of conduct.
>
> However, Kearns fails to allege in any of his complaints the particular circumstances surrounding such representations. Nowhere in the TAC does Kearns specify what the television advertisements or other sales material specifically stated. Nor did Kearns specify when he was exposed to them or which ones he found material. Kearns also failed to specify which sales material he relied upon in making his decision to buy a CPO vehicle. Kearns does allege that he was specifically told "CPO vehicles were the best used vehicles available as they were individually hand-picked and rigorously inspected used vehicles with a Ford-backed extended warranty." Kearns does not, however, specify who made this statement or when this statement was made. Kearns failed to articulate the who, what, when, where, and how of the misconduct alleged. The pleading of these neutral facts fails to give Ford the opportunity to respond to the alleged misconduct. Accordingly, these pleadings do not satisfy the requirement of Rule 9(b) that "a party must state with particularity the circumstances constituting fraud . . . ." Because Kearns failed to plead his averments of fraud with particularity, we affirm the district court's dismissal of his TAC.

*Kearns*, 567 F.3d at 1125–26.

As in *Kearns*, Finney fails to plead the "who, what, when, where, and how" of Defendant's alleged misrepresentations. The Court GRANTS Defendant's motion for judgment on the pleadings as to the fraudulent misrepresentation claim.

### G. Whether Plaintiff's Misrepresentation and Concealment Claims are Based On Nonactionable Puffery

Ford argues that Plaintiff's misrepresentation and concealment claims are based on nonactionable puffery. ECF No. 10 at 16. Defendant alleges that its statements in marketing brochures and commercials were all "standard sales talk." *Id.* Finney argues that Defendant's statements that the truck had the "best in-class: horsepower, gas torque, unsurpassed diesel horsepower," and had superior towing capacity, were not puffery because they were specific and detailed. FAC ¶¶ 20, 21, 24.[10]

---

[10] The Court also reviewed the remaining statements in Finney's complaint, including the dealership's statement that the engine would offer "superior power," and found none that helped Finney overcome Defendant's puffery arguments. *See, e.g.*, FAC ¶ 20 (referring to marketing materials that the engine was the "longest lasting diesel in its class," had "unsurpassed diesel horsepower," and was the "boldest, strongest, and most capable yet").

11

"Vague or highly subjective claims about product superiority amount to non-actionable puffery." *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1026 (N.D. Cal. 2012). Accordingly, courts in this district and circuit have concluded that generalized assertions regarding a vehicle's "high performance," or "durability" are puffery. *See Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection. Serv. Inc.,* 911 F.2d 242, 246 (9th Cir. 1990) (providing as examples of inactionable puffery statements that a defendant provided the "best technology" and "better customer service" than its competitors, and noting that "advertising which merely states in general terms that one product is superior is not actionable"); *Vitt v. Apple Comput., Inc.*, 469 Fed. App'x 605, 607 (9th Cir. 2012) (affirming dismissal on basis that descriptors such as "durable," "reliable," and "high performance" were not actionable); *Azoulai v. BMW of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL 1354781, at *7-8 (N.D. Cal. Apr. 13, 2017) (generalized assertions regarding a vehicles "safety" or "durability" are mere puffery). Likewise, courts in this circuit have concluded that statements that a product is best in class, "unsurpassed," or "state of the art," are puffery. *See Johnson v. Mistubishi Digital Elecs. Am. Inc.*, 578 F. Supp. 2d 1229, 1238 (C.D. Cal. 2008) (concluding statement that a television has "unsurpassed picture quality" was puffery); *see also Elsayed v. Maserati N. Am., Inc.*, 215 F. Supp. 3d 949, 960 (C.D. Cal. 2016) (concluding statement that car's engineering was "state of the art" was puffery).

Finney's complaint rests solely on statements like those just quoted. For example, Ford is alleged to have stated that its 6.0-liter diesel engine "is built 'Ford tough'"; that its 6.0-liter diesel engine is the "longest lasting diesel motor" and "the longest lasting diesel in its class"; that the 2006 Ford F-250 Super Duty was "best in class," with "unsurpassed diesel horsepower," and so forth. ECF No. 1-2 ¶ 20. Accordingly, the Court will GRANT Ford's motion for judgment on the pleadings as to Finney's misrepresentation claims. However, the Court will DENY Ford's motion on this ground as to Finney's concealment claims, because the concept of puffery applies only to affirmative misrepresentation claims. *See Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007) (describing the elements of concealment); *see also In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-MD-02777-EMC, 2018 WL 1335901, at *54 (N.D. Cal. Mar. 15, 2018) ("Defendants argue still that, to the extent Plaintiffs have identified any

misleading advertising, that advertising amounts to puffery which is not actionable. This argument, of course, applies to Plaintiffs' affirmative misrepresentation theory only, and not any theory of fraudulent concealment.").

### H. Whether the Economic Loss Rule Bars Finney's Fraud Cause of Action

Defendant argues that the economic loss rule bars Finney's fraud causes of action. ECF No. 10 at 18. "Simply stated, the economic loss rule provides: '[W]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses.'" *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (quoting *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 486 N.W.2d 612, 615 (1992)). "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Id.*

As to Finney's claims for fraudulent inducement, Ford's argument is unpersuasive. "The economic loss rule poses no barrier to a properly pled fraudulent inducement claim: '[I]t has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for fraud.'" *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1188 (C.D. Cal. 2009) (quoting *Lazar v. Superior Court,* 12 Cal. 4th 631, 645 (1996)); *see also R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2017 WL 1164296, at *4–7 (N.D. Cal. Mar. 29, 2017) (same); *Joli Grace, LLC v. Country Visions, Inc.*, No. 2:16-1138 WBS EFB, 2016 WL 6996643, at *9 (E.D. Cal. Nov. 30, 2016) (same); *Waitt v. Internet Brands, Inc.*, No. CV103006GHKJCGX, 2011 WL 13214104, at *2 (C.D. Cal. Jan. 6, 2011) (same); *Cty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 329 (2006) (declining to apply to economic loss rule to fraud claims including fraudulent concealment).

As to Finney's claim for fraud in the performance of contract, however, Ford's motion is well-taken. "'Generally, outside the insurance context, a tortious breach of contract . . . may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or

13

conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion; or (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages.'" *Robinson Helicopter*, 34 Cal. 4th at 990 (quoting *Erlich v. Menezes*, 21 Cal. 4th 543, 553-54 (1999)). As to Ford's performance on its sales contract or express warranty, Finney's remedies are in contract and not in fraud.

Accordingly, the Court DENIES Ford's motion as to Finney's fraudulent inducement claims but GRANTS it as to her claims for fraud in the performance of contract, on the basis of the economic loss rule.

## CONCLUSION

For the foregoing reasons, Ford's motion for judgment on the pleadings is granted as to all of Finney's claims with the exception of her claim under the Song-Beverly Consumer Warranty Act. Finney may file an amended complaint within 21 days of the issuance of this order solely to correct the deficiencies identified herein. She may not add new claims without leave of court.

**IT IS SO ORDERED.**

Dated: June 4, 2018

_____
JON S. TIGAR
United States District Judge