UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAURA FINNEY,

           Plaintiff,

    v.

FORD MOTOR COMPANY,

           Defendant.

Case No. 17-cv-06183-JST

**ORDER GRANTING JUDGMENT ON THE PLEADINGS**

Re: ECF No. 38

Before the Court is Defendant Ford Motor Company's second motion for judgment on the pleadings. ECF No. 38. The Court will grant the motion in full.

**I.     BACKGROUND**

In October 2005, Laura Ellen Finney purchased a new 2006 Ford F-250 Super Duty pickup truck with a 6-liter diesel engine at the Novato Ford dealership. ECF No. 36 ("SAC") ¶¶ 16-17, 24. In purchasing the truck, Finney relied upon statements from Novato employees and Ford promotional materials communicating that the truck had the "strength to handle the toughest assignments" and "would offer superior power and tow capacity" with an engine that was the "longest lasting diesel in its class." *Id.* ¶¶ 20, 22, 24-25.

Finney subsequently experienced problems with the truck, which included oil leaks and issues with the fuel injection and oil pump. *Id.* ¶ 27. The Ford dealership "attempted to make repairs to the vehicle's engine on multiple occasions." *Id.* ¶ 29. Finney relied on the dealership's repeated representations that it had fixed any engine problems, but problems persisted. *Id.* ¶ 32. Plaintiff recalls taking the truck to the Journey Ford Lincoln dealership in November 2007 because the check engine light was on; in November 2009 because the truck stalled; in December 2010 because the check engine light was on and there was a fuel leak; and in January 2011

1    because "the engine was running rough on cold starts"; and being told each time that the vehicle

2    was fixed. *Id.* ¶¶ 72-75.  Finney alleges that the first time she reasonably could have discovered

3    that her vehicle in fact contained "latent, irreparable defects" was when she took it to a third-party

4    repair facility in March 2015 after the check engine light again came on. *Id.* ¶ 76.

5         Finney alleges that Ford was aware of the engine defect. *Id.* ¶ 37.  She points to a May

6    2002 statement by Charlie Freese, Ford's Chief Engineer of Diesel Engines, that the engine

7    featured "multiple high risk items" such as piston and injector failures. *Id.* ¶ 39; *see also id.* ¶ 46

8    (citing similar statements made in July 2005 by Chris Bolen, Ford's director of North America

9    Powertrain Manufacturing).  In January 2007, Ford sued its engine supplier, Navistar, for

10   "exceptionally high repair rates and warranty costs due to quality problems attributable to

11   Navistar, including design flaws." *Id.* ¶ 48 (internal quotation marks omitted).  Though Ford knew

12   about these defects, it continued to market the engine's supposedly superior attributes. *Id.* ¶ 50.

13        Claims regarding the same engine defects were previously raised in three class action

14   lawsuits: *Adams v. Ford Motor Company*, No. 37-2012-91290-CR-BC-CTl in San Diego Superior

15   Court, *id.* ¶ 84; *Burns v. Navistar Inc. & Ford Motor Co.*, 10-cv-2295-LAB-BGS in the Southern

16   District of California, *id.* ¶ 102; and *Custom Underground, Inc. v. Ford Motor Co.*, 1:10-cv-127 in

17   the Northern District of Illinois, *id.* ¶ 124, all of which were consolidated into a multi-district

18   litigation, *In re: Navistar 6.0 L Diesel Engine Products Liability Litigation*, No. 11-C-2496 in the

19   Northern District of Illinois, *id.* ¶¶ 87, 118, 129.

20        Finney filed suit against Ford in the Superior Court of California for Marin County in

21   September 2017.  ECF No. 1-2 at 8.  Ford removed the case to this Court on the basis of diversity

22   jurisdiction in October 2017.  ECF No. 1.  Finney brings claims for (1) fraud in the inducement –

23   intentional misrepresentation; (2) negligent misrepresentation; (3) fraud in the inducement –

24   concealment; (4) fraud in the performance of a contract – intentional misrepresentation; (5)

25   violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.*; and (6)

26   violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA").  SAC

27   ¶¶ 160-353.  She seeks damages, rescission of the purchase contract, civil penalties, equitable

28   relief, punitive damages, and attorneys' fees and costs. *Id.* at 62.

1    This Court previously granted Ford judgment on the pleadings and dismissed all of

2    Finney's claims, except for her Song-Beverly claim. ECF No. 35. Finney filed a second amended

3    complaint, ECF No. 36, and Ford now again moves for judgment on the pleadings, ECF No. 38.

4    **II.    LEGAL STANDARD**

5    The analysis for Rule 12(c) motions for judgment on the pleadings is "substantially

6    identical to [the] analysis under Rule 12(b)(6)." *Chavez v. United States*, 683 F.3d 1102, 1108

7    (9th Cir. 2012) (citation and quotation marks omitted). Under both rules, "a court must determine

8    whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy."

9    *Brooks v. Dunlop Mfg. Inc.*, No. C 10–04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9,

10   2011); *Fajardo v. Cty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999). A plaintiff must allege

11   facts that are enough to raise his right to relief "above the speculative level." *Bell Atl. Corp. v.*

12   *Twombly*, 550 U.S. 544, 55 (2007) (citation omitted). "Finally, although Rule 12(c) does not

13   mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to

14   amend, and to simply grant dismissal of the action instead of entry of judgment." *Lonberg v. City*

15   *of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citations omitted).

16   Under Federal Rule of Civil Procedure 9(b), a complaint asserting fraud must supply "the

17   circumstances constituting the alleged fraud" with a description "'specific enough to give

18   defendants notice of the particular misconduct . . . so that they can defend against the charge and

19   not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

20   1124 (9th Cir. 2009) (citation omitted). Fraud claims must allege "an account of the time, place,

21   and specific content of the false representations as well as the identities of the parties to the

22   misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)

23   (internal quotation marks omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106

24   (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and

25   how of the misconduct charged." (internal quotation marks omitted)).

26   The statutes of limitations applicable to Finney's causes of action are as follows: Her

27   negligent misrepresentation claim is subject to a two-year statute of limitations. *E-Fab, Inc. v.*

28   *Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1316 (2007). Her CLRA claims are subject to a

3

1    three-year statute of limitations, Cal. Civ. Code § 1783, as are her three common-law fraud claims,

2    *E-Fab, Inc.*, 153 Cal. App. 4th at 1316. Finally, Finney's Song-Beverly Act claim is subject to a

3    four-year statute of limitations. *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205,

4    210-11 (1991).

5    **III.    DISCUSSION**

6        The Court's prior order granted Ford judgment on the pleadings on all claims – excluding

7    Finney's Song-Beverly Act claim, which Ford did not challenge. ECF No. 35. The Court

8    dismissed the claims with leave to amend.[1] The Court held, first, that Finney's claims were

9    untimely because she failed to adequately plead delayed discovery. *Id.* at 6. Assuming without

10   deciding that Finney's claims were subject to tolling under *American Pipe & Construction Co. v.*

11   *Utah*, 414 U.S. 538, 553 (1974), the Court held that even if the related class actions had tolled

12   Finney's claims, her complaint was still untimely filed. *Id.* at 7. In addition to holding that all the

13   challenged claims were time-barred, the Court concluded that several of Finney's claims were

14   inadequately pled. Specifically, the Court held that Finney failed to plead her fraudulent

15   misrepresentation claim with the required specificity, *id.* at 11, that all three of her

16   misrepresentation claims were based on nonactionable puffery, *id.* at 12, and that the economic

17   loss rule barred her claim for fraud in the performance of a contract, *id.* at 14.

18       In the motion now before the Court, Ford urges that Finney's complaint be dismissed in its

19   entirety because her amendments have failed to cure the defects identified by the Court. ECF No.

20   38-1 at 3. Ford renews its assertions that (1) all of Finney's causes of actions are time-barred (this

21   time, including the Song-Beverly Act claim), *id.* at 2; (2) Finney's CLRA and common-law fraud

22   claims are not pled with specificity, *id.* at 4-5; and (3) Finney cannot overcome the economic loss

23   rule, ECF No. 42 at 2. The Court addresses each of these contentions in turn.

24

25   _____

26   [1] Ford argues that the Court granted Finney leave to amend "solely to cure the defects with respect
     to the Song-Beverly claim only." ECF No. 38-1 at 3. But the Court's prior order identified no
27   defects in Finney's Song-Beverly claim, given that Ford did not seek judgment on the pleadings as
     to that claim. Rather, the Court granted Finney leave to amend her complaint "to correct the
28   deficiencies identified herein" – i.e., to amend the claims that the Court dismissed as time-barred
     and/or inadequately pled. ECF No. 35 at 14.

**A.      Statute of Limitations**

Finney purchased her truck in 2005, but did not file suit until 2017.  Because this twelve-year period far exceeds the two- to four-year statutes of limitations applicable to Finney's claims, Ford asserts that each of Finney's claims is time-barred.  ECF No. 38-1 at 6.  Thus, Finney must allege some basis for tolling to avoid judgment on the pleadings.

First, Finney attempts to assert delayed discovery.  *See* ECF No. 41 at 6.  "[U]nder the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action.  In that case, the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005).  In order to rely on this rule, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808 (quoting *McKelvey v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (1999)).

The Court previously granted Ford judgment on the pleadings on all of Finney's claims, except her Song-Beverly claim, on the grounds that the claims were untimely.  The Court held that Finney's allegations of delayed discovery were unavailing because she "fail[ed] to plead why she did not discover the defect until 2015 when she purchased the car 10 years earlier in 2005, and received several repairs seemingly related to the defect while on warranty between 2005 and 2010." ECF No. 35 at 6.  Finney has added several paragraphs to her second amended complaint to attempt to remedy this defect, providing additional detail about the four times she took the car to the Journey Ford Lincoln dealership for repairs between 2007 and 2011.  SAC ¶¶ 72-75.  Those visits were inspired by engine-related trouble – check engine lights, a fuel leak, stalling out, and "running rough on cold starts." *Id.*  But Finney sticks to her earlier allegation that the first time she reasonably could have discovered her truck's "latent, irreparable defects" was when she took it to a third-party repair facility in March 2015 in response to a check engine light. *Id.* ¶ 76.

5

1          Despite Finney's amendments, the Court once again concludes that she has failed "to

2   adequately allege reasonable diligence in discovering the defect." ECF No. 35 at 5. Finney's

3   second amended complaint includes additional information on the time and manner of discovery,

4   but it still fails to plausibly allege why she was unable to have discovered her engine problems

5   earlier. *See McKelvey*, 74 Cal. App. 4th at 160. "[T]he limitations period begins when the

6   plaintiff suspects, or should suspect, that she has been wronged." *Jolly v. Eli Lilly & Co.*, 44 Cal.

7   3d 1103, 1114 (1988). Finney's allegations that a Ford dealership told her after each of four

8   repairs that the problems with her engine were fixed is not sufficient to plead delayed discovery.

9   *See Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJWX, 2014 WL 5017843, at

10  *5 (C.D. Cal. Oct. 3, 2014). If anything, these allegations more starkly illustrate the flaws in

11  Finney's delayed discovery claim: she fails to explain how the illumination of a check-engine

12  light alerted her to the existence of her claims in 2015, while repeated problems with the same

13  engine between four and eight years earlier did not. After four visits to the dealership for repairs

14  in as many years, Finney should have suspected something was amiss, regardless of

15  representations that the problem was fixed. *See id.* Again, the Court finds that Finney has failed

16  to explain why the "2015 engine light, as opposed to the many prior problems that brought her to

17  the Ford dealership, put her on notice of her claims." ECF No. 35 at 5. Finney has failed to plead

18  delayed discovery.

19          Similarly, as the Court has already concluded, *American Pipe* tolling cannot save Finney's

20  claims. "[T]he commencement of a class action suspends the applicable statute of limitations as to

21  all asserted members of the class who would have been parties had the suit been permitted to

22  continue as a class action." *American Pipe*, 414 U.S. at 554. Here, even assuming that the three

23  class actions asserting the same engine defect tolled Finney's claims, her suit was still untimely.

24  As the Court noted in its earlier order granting judgment on the pleadings, "the limitations period

25  would have restarted when [Finney] was excluded from the class in November 2012, or at latest

26  when the class was certified as part of the multi-district litigation class action settlement in July

27  2013." ECF No. 35 at 7. Thus, even the Song-Beverly claim, which has the longest statute of

28  limitations applicable here – four years – would be barred by the time Finney brought suit in

1   September 2017. Finney's opposition to the current motion fails to address this point, and her

2   amendments to the complaint have not corrected this deficiency. Because Finney's claims were

3   untimely filed, and she has failed to adequately allege any basis for tolling, the Court GRANTS

4   Ford's motion for judgment on the pleadings as to all claims.

5           **B.      CLRA and Fraud Claims**

6           Federal Rule of Civil Procedure 9(b) requires that allegations of fraud be pleaded with

7   particularity. *See Kearns*, 567 F.3d at 1123. "Averments of fraud must be accompanied by the

8   who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal

9   quotation marks omitted). This includes "an account of the time, place, and specific content of the

10  false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476

11  F.3d at 764 (internal quotation marks omitted). The Ninth Circuit has specifically held that these

12  heightened pleading standards apply to claims for violations of the CLRA. *Kearns*, 567 F.3d at

13  1125 (citing *Vess*, 317 F.3d at 1102-05).

14          In challenging Finney's CLRA and common-law fraud causes of action, Ford relies on

15  *Kearns* for the proposition that "a broad, conclusory claim of reliance on a general advertising

16  campaign is insufficient to meet this [particularity] standard." ECF No. 38-1 at 4-5. The Court

17  previously granted Ford judgment on the pleadings on Finney's fraudulent misrepresentation

18  claims on this basis. *See* ECF No. 35 at 11. Even after Finney was granted leave to amend, the

19  Court concludes that she has not corrected this defect in her complaint.

20          As Ford points out, ECF No. 38-1 at 6, Finney continues to make only general allegations

21  about Ford's nationwide advertising campaigns, as well as representations made by "sales

22  personnel" at the Novato dealership, that she claims to have relied upon in purchasing her truck.

23  *See* SAC ¶¶ 20-26. In opposition, Finney claims that her allegations are specific enough given

24  that "Ford has complete access to its marketing and advertising materials regarding its

25  representation of the 6.0-liter engine," while "the identity of those individuals who related further

26  misinformation regarding the qualities of the 6.0-liter engine to Plaintiff is easily within Ford's

27  knowledge." ECF No. 41 at 12. What Finney fails to address is how Ford is supposed to know

28  what specific promotional materials Finney was personally exposed to, much less which

7

United States District Court
Northern District of California

1    statements she relied upon in purchasing her truck, without her pleading those details. *See Todd v.*

2    *Tempur-Sealy Int'l, Inc.*, No. 13-CV-04984-JST, 2016 WL 5746364, at \*12 (N.D. Cal. Sept. 30,

3    2016) ("[I]t cannot be assumed that mattress customers buy a product based on any particular

4    marketing representation that they viewed or heard prior to their purchase. Indeed, many mattress

5    consumers – including, potentially, some of the named Plaintiffs – likely entered a store with no

6    specific idea of the brand or product they wish to buy, and make their purchase based simply on

7    their impressions while shopping."). Rule 9(b) requires plaintiffs to describe "the circumstances

8    constituting the alleged fraud" with a description "specific enough to give defendants notice of the

9    particular misconduct . . . so that they can defend against the charge and not just deny that they

10   have done anything wrong." *Kearns*, 567 F.3d at 1124 (internal quotation marks omitted).

11   Because the Court again concludes that Finney has failed to plead her claims with the specificity

12   Rule 9(b) demands, the Court GRANTS Ford's motion as to Finney's common-law fraud claims

13   and CLRA claims on this additional basis.

14          **C.      Economic Loss Rule[2]**

15          "The economic loss rule requires a purchaser to recover in contract for purely economic

16   loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken

17   contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)

18   (citation omitted). Finney's SAC again fails to allege any independently tortious breach that could

19   supplement her claim for fraud in the performance of her contract with Ford and thereby defeat the

20   economic loss rule. Thus, as the Court previously held, Finney's remedies "are in contract and not

21   in fraud." ECF No. 35 at 14. Accordingly, the Court again GRANTS Ford's motion as to

22   Finney's claim for fraud in the performance of a contract.

23   / / /

24

25   _____

26   [2] Ford did not contend that Plaintiffs' claims were barred by the economic loss rule, raising the
     argument for the first time in its reply. Arguments raised for the first time on reply are generally
     disfavored. *See Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078,
27   1089 (E.D. Cal. 2006). In this instance, however, there is no unfairness in addressing the issue
     because Finney raised it preemptively in her opposition, ECF No. 41 at 13-15, and this deficiency
28   in Finney's complaint was already identified in the Court's prior order granting judgment on the
     pleadings, ECF No. 35 at 14.

**CONCLUSION**

For the foregoing reasons, Ford's motion for judgment on the pleadings is granted as to all of Finney's claims, including her Song-Beverly claim. Because Finney's amendments in response to the Court's earlier order granting judgment on the pleadings failed to correct the deficiencies in her complaint, the Court denies Finney's request for additional leave to amend because it concludes that further leave would be futile. *See* ECF No. 41 at 15; *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987) ("Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility.").

The Clerk is directed to enter a judgment of dismissal in favor of Defendant.

**IT IS SO ORDERED.**

Dated: January 2, 2019

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California